UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANGEL LAHOZ,

                Plaintiff,

-against-

CITY OF NEWBURG POLICE DEPT; CITY OF NEWBURGH; P.O. SGT. MANN; DT. PATT; PAROLE OFFICER ROYCE; SR. PAROLE OFFICER EDWARD ANGRISANI

                Defendants.

17-cv-5288 (NSR)

ORDER & OPINION

NELSON S. ROMÁN, United States District Judge:

Angel Lahoz ("Plaintiff"), currently incarcerated in Downstate Correctional Facility, brings this *pro se* action under 42 U.S.C. § 1983 alleging that City of Newburg Police Dept; City of Newburgh; P.O. Sgt. Mann; Dt. Patt; Parole Officer Royce; Sr. Parole Officer Edward Angrisani (collectively, "Defendants") maliciously prosecuted him. (*See* Complaint, ("Compl."), ECF No. 2.) Presently before the Court are two motions to dismiss the Complaint. The first is Defendants Angrisani's and Royce's Motion to Dismiss the Complaint as to the Parole Officer Defendants. (("Def. Mem."), ECF No. 26.) The second is Defendants City of Newburgh's, Mann's and Patt's Motion to Dismiss the Complaint for failure to state a claim under Rule 12(b)(6). (("Sec. Def. Mem."), ECF No. 30.) For the following reasons, both Motions to Dismiss are GRANTED.

## BACKGROUND

The following facts, taken from the Complaint, are presumed true for deciding this motion. In addition, when ruling on motions to dismiss under Rule 12(b)(6), courts must consider the complaint, "as well as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007); *Staehr v. Hartford Fin. Servs. Grp. Inc.*, 547 F.3d 406, 426 (2d Cir.2008). While consideration of matters outside the pleadings generally converts a motion to dismiss to a motion for summary judgment, consideration of facts for which judicial notice may be taken does not. *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016); Fed. R. Civ. P. 12(d).

Courts may take judicial notice of any adjudicative fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(a)-(b). Though "[t]he court must take judicial notice if a party requests it and the court is supplied with the necessary information," Fed. R. Evid. 201(c)(2), it need not take notice of generally irrelevant documents. *Midamines SPRL Ltd. v. KBC Bank NV*, 601 F. App'x 43, 46 (2d Cir. 2015).

As Plaintiff repeatedly references the adjudicative hearing in his Complaint, the Court takes judicial notice of the hearing transcripts, which are incorporated into the Complaint by reference.

### A. Plaintiff's Arrest and Release

On October 14, 2013, Plaintiff, a parolee who was residing at Bridges-Halfway House, was arrested at 2:20 a.m. by the Newburgh Police Department "based on a frivolous [f]elony [c]omplaint made by his then ex-girlfriend[,] and [he] then was criminally charge[d] with Burglary in the 1st degree and Menacing-with a weapon...." (*See* Compl. at 4.) Plaintiff claims that there was no probable cause for this arrest. (*Id*.) Plaintiff alleges that his ex-girlfriend had called the City of Newburgh Police Department and filed a frivolous felony complaint, which stated that, earlier that night, Plaintiff went to her apartment, entered without her permission or knowledge, and had threatened to stab her with a knife.

(*Id.*) The Parole Officer Defendants supposedly then "dropped a warrant charging [Plaintiff] with multiple parole violation charges arising from the police felony complaint and maliciously put a parole hold on [p]laintiff" in violation of his Fourth Amendment constitutional rights. (*Id.*)

Plaintiff claims that he was then held in the Orange County Jail after the underlying criminal charges were dropped on July 4, 2014 and that parole maliciously added additional violations, thereby continually violating his Fourth Amendment rights. (*Id.*) Plaintiff also claims that his Fourth Amendment rights were violated, through an illegal search and seizure, when the police officer searched and found his knife/box cutter with his belongings in the halfway house on the night that his ex-girlfriend made the supposedly frivolous felony complaint. (*Id.*) The complaint states that Plaintiff's ex- girlfriend eventually recanted her story "but this did not satisfy the District Attorney nor parole defendants as he was not released from custody until August 28th after a final parole hearing despite dismissal of the criminal charges on July 4th (*Id.*)

## B. The Preliminary Parole Revocation Hearing

On October 23, 2013, Administrative Law Judge ("ALJ") Edward Mevec held a Preliminary Revocation Hearing on the charge that Plaintiff violated a condition of his release by being in possession of a knife/box cutter. (*See* Transcript of October 23, 2013 Preliminary Hearing annexed to Turkle Decl. as Ex. 1, p. 9). At the hearing, Defendant P.O. Royce testified that, at the time of the incident, Plaintiff was living in a halfway house known as Bridges. (*Id*. at 10-11.) He also testified that, at approximately 2:30 a.m. on October 14, 2013, Plaintiff was arrested at Bridges by the Newburgh Police Department after a search of his room uncovered the weapon that had been reported. (*Id*. at 12.) At the

3

hearing, Plaintiff admitted possessing the knife/box cutter, claiming that he kept it inside a bag of tools that he uses in connection with his construction job. (*Id*. at 12-13.) Plaintiff further admitted that his arrest was based on a statement by his girlfriend to the police, stating that: "if it wasn't because she called the cops and fabricated a lie with this jealousy stuff, I would never have been here right now facing charges with me having box cutters and threatening someone which it never happened." (*Id*. at 20-21.) Upon being advised by house workers at Bridges of Plaintiffs arrest, P.O. Royce conferenced the case with a senior parole officer and issued a parole revocation warrant. (*Id*.)

Police Officer Melanie Mann testified that at around 2:19 am on October 14, 2013, she responded to a burglary call in progress; was given Plaintiffs name as a suspect; observed Plaintiff entering Bridges; and was given permission by the Bridges' house manager to enter Plaintiffs room. (*Id*. at 22- 23.) Once inside, Mann received a radio call that a red handled knife was used during the burglary. (*Id*.) Mann saw a red object laying on top of an open gray plastic bag. (*Id*. at 24.) At the hearing, she identified the knife/box cutter from a photograph taken at the scene. (*Id*. at 25.) The Hearing Officer found that "[i]n regards to Charge #4, Rule #9, there is probable cause ... in that on October 14, 2013 you were in possession of a knife without the knowledge or permission of your Parole Officer." (*Id*. at 35-36.)

### C. The Final Parole Revocation Hearing

After the October 23, 2013 preliminary parole revocation hearing concluded, the final hearing was adjourned 12 times, of which 10 adjournments were requested by Plaintiff. (*See* ECF No. 26-2.) The final revocation hearing was held on July 29, 2014. The charges at issue

at the hearing were that Plaintiff:

> Violated Rule 9... in that "on 10/14/13, at approximately 2:20 AM..., he was in possession of a knife/boxcutter.
>
> Rule 9 of the rules governing supervision states that a parolee will not own [or] possess... any dangerous knife...

(August 26, 2014 Disposition, ("Disposition"), ECF No. 26-4.) ALJ Mevec presided over the final parole revocation hearing. (Final Hearing Tr. ECF No. 26-3.) Plaintiff was represented by counsel. P.O. Royce and Mann gave testimony; no testimony was offered on behalf of Plaintiff. P.O. Royce testified that she had not given Plaintiff permission to possess a knife or a box cutter and that she did not know that Plaintiff had possessed a knife or a box cutter. (*Id*. at 20.) She explained that Plaintiff "was not to be in possession of anything-any weapons or anything that could be interpreted as a weapon." (*Id*. at 28.)

Mann repeated her prior testimony, stating that on October 14, 2013, she responded to a report that a suspect identified as the Plaintiff was seen running into Bridges and encountered Plaintiff in his room on the third floor of the building. (*Id*. at 32-33.) She then got permission to go inside Plaintiff's room, where she saw a plastic bag containing a red-handled pocketknife. (*Id*. at 36.) She identified two photographs that were taken immediately after the knife was located, stating that the knife shown in the photographs was the weapon she removed from Plaintiffs room. (*Id*. at 38.) Mann placed the knife in an evidence bag, which she kept in her control until she left the scene and returned to the police station, where she placed the knife in evidence. (*Id*. at 43.)

### D. The Parole Violation Charges Were Sustained

In a Decision dated August 26, 2014, ALJ Mevec sustained the Charges against Plaintiff. (*See* Disposition). The ALJ found, among other things, that:

5

> PO Royce testified that she did not give [Plaintiff] permission to be in possession of a knife/boxcutter. PO Royce also testified that [Plaintiff] made a subsequent admission regarding the knife/boxcutter in issue. The Court finds that DOCCS has met its burden of proof and sustains Charges Seven and Eight.

(*Id.*) Strangely, however, the Complaint erroneously alleges that Plaintiff "contested his final parole hearing and won... " (*See* Compl. at 10.) In actuality, the ALJ sustained the charge; but because Plaintiff had already been incarcerated for approximately 10 ½ months pending the final revocation hearing, the ALJ restored Plaintiff "to supervision notwithstanding the violation...." (*See* Disposition.)

## STANDARD OF REVIEW

Under Rule 12(b)(6), the inquiry for motions to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id*. at 679. A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

For motions brought under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "[T]he court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). Though a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, [it] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013). The court should read *pro se* complaints "'to raise the strongest arguments that they suggest,'" *Kevilly v. New York,* 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (quoting *Brownell v. Krom,* 446 F.3d 305, 310 (2d Cir. 2006)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("even after *Twombly*, though, we remain obligated to construe a pro se complaint liberally.") "However, even pro se plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Dismissal is justified, therefore, where "the complaint lacks an allegation

regarding an element necessary to obtain relief," and therefore, the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations omitted).

## DISCUSSION

### A. Statute of Limitations

Defendants Pitt, Mann, and the City of Newburgh ("Second Defendants") argue that Plaintiff's suit for false arrest against the police officers is time barred by the statute of limitations. (Sec. Def. Mem.), ECF No. 26 at 3.) They argue that because Plaintiff's claim for false arrest stems from what his ex-girlfriend alleged occurred at her home on October 13, 2013, and there is no other event described which reasonably can be interpreted to involve Mann and Pitt—and further, since the criminal charges were dismissed on July 4, 2014, any involvement of City police officers, although none is alleged, would necessarily be before that date. (*Id.*) The Court agrees.

The statute of limitations for a claim of false arrest under 42 U.S.C. §1983 in New York is three years. *Jaghory v. New York State Department of Education*, 131 F.3d 326,331 (2d Cir. 1997); *Patterson v. County of Oneida*, 375 F.3d 206,225 (2d Cir. 2004). Occasionally, egregiously unlawful or fraudulent conduct can warrant equitable tolling of the statute. *See Ellul v. Congregation of Christian Brothers*, 774 F.3d 791, 801-02 (2d Cir. 2014).

Plaintiff filed his Complaint on July 11, 2017. The Complaint alleges that his final hearing took place on July 4, 2014 and that Plaintiff was released from custody and returned to parole status on August 28, 2014. (*See* Compl.) Between the date of his arrest and the date of his final hearing, Plaintiff makes no mention of Officers Mann, Pitt, and the City of Newburgh—indeed, Officers Mann and Pitt or not mentioned anywhere in the Complaint. Even assuming that they, along with the City of Newburgh, were impliedly involved with the events at issue through the date of the final hearing, Plaintiff filed his Complaint more than

three years after the date of the final hearing, which is beyond the statute of limitations. Moreover, Plaintiff provides no reason why the suit was not instituted in a timely manner, nor does he suggest any conduct by these defendants that would warrant equitably tolling the statute.

Accordingly, the claims brought against Officers Mann, Pitt, and the City of Newburgh are time barred and dismissed, with prejudice, pursuant to Rule 12(b)(1). In the alternative, should the Complaint be deemed to relate to earlier events or be worthy of equitable tolling, Plaintiff's claims fail on numerous other grounds including Rule 12(b)(6).

**B. Failure to State a Claim for False Arrest/ Imprisonment and Malicious Prosecution**

*1. False Arrest/ False Imprisonment*

To state a claim under §1983 for false arrest or false imprisonment, a plaintiff must show that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012). In other words, "[t]o establish a claim for false arrest under 42 U.S.C. §1983, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).

"The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under §1983." *Weyant*, 101 F.3d at 852 (citation omitted); *Kent v. Katz*, 312 F.3d 568, 573 (2d Cir. 2002) (citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995)). "Probable cause is not a particularly demanding standard." *Chodkowski v. City of New York*, No. 06 Civ. 7120, 2007 WL 2717872, at *4 (S.D.N.Y. Sept. 11, 2007) (quoting *United States v. Solomonyan*, 452 F.Supp.2d

9

334, 343 (S.D.N.Y. 2006)). Probable cause may exist "even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citation omitted).

Once an officer possesses facts sufficient to establish probable cause, he is "neither required nor allowed to sit as prosecutor, judge or jury"; rather, his "function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause v. Bennett*, 887 F.2d 362,372 (2d Cir. 1989). *See also Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006) (citation omitted). "It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." *Martinez v. Simonetti*, 202 F.3d 625,634 (2d Cir.2000) (quoting *Miroslavsky v. AES Eng'g Soc'y*, 808 F.Supp. 351,355 (S.D.N.Y.1992), *aff'd*, 993 F.2d 1534 (2d Cir.1993)). "If policemen arrest a person on the basis of a private citizen's complaint that if true would justify the arrest, and they reasonably believe it is true, they cannot be held liable ... merely because it later turns out that the complaint was unfounded." *Lee v. Sandberg*, 136 F.3d 94, 103 (2d Cir.1997). *See Calderola v. Calabrese*, 298 F.3d 156, 165 (2d Cir.2002). Where the facts surrounding the arrest are uncontroverted, the determination as to whether probable cause existed may be made by the Court as a matter of law. *Weyant*, 101 F.3d at 852.

Here, Plaintiff admitted that the preliminary parole revocation hearing officer found probable cause (described in the ALJ hearing as "reasonable cause") to believe that Plaintiff had violated at least one condition of his parole by possessing a knife/box cutter. That finding came from a complaint of a putative victim and was corroborated through extrinsic evidence, which led the police to reasonably believe that the complaint was true. Although the initial complaint was later determined to be unfounded, the original finding of probable cause was

sustained by ALJ Mevec at the final hearing, and ALJ Mevec further determined that the police acted appropriately in response to the complaint. Indeed, the ALJ's determination alone conclusively establishes the existence of probable cause to revoke Plaintiff's parole, which is a complete defense to Plaintiffs claims for false arrest and false imprisonment. *See Covington v. City of N.Y.,* 171 F.3d 117, 122 (2d Cir.1999).[1]

Accordingly, Plaintiff's claims for False Arrest/Imprisonment under the Fourth Amendment fail as a matter of law and are dismissed with prejudice.

### 2. *Malicious Prosecution*

To state a claim for malicious prosecution, a plaintiff must allege that: (1) the defendant initiated and continued a criminal proceeding against him; (2) there was no probable cause for that proceeding; (3) the proceeding terminated in plaintiffs favor; and (4) the defendant commenced the criminal proceeding with malice. *See Murphy v. Lynn*, 118 F.3d 938,947 (2d Cir. 1997). Again, the lower "reasonable cause" standard applies to revocation proceedings. The existence of reasonable cause is also "a complete defense to a constitutional claim of malicious prosecution." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). "If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'" *Johnson v. Constantellis*, 221 Fed. Appx. 48, 50 (2d Cir. 2007) (summary order) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003)).

Here, just as with the False Arrest and False Imprisonment claims, Plaintiff's claim for malicious prosecution fails because the record unequivocally establishes that there was probable

---

[1] Defendants argue that Plaintiff should be collaterally estopped from even litigating the issue of whether there was probable cause as that issue has already been adjudicated in an agency forum where he had a full and fair opportunity to be heard and present his case. (Def. Mem. at 10-11.) The Court need not reach this argument as the evidence showing that there were multiple probable cause findings is sufficient to show that Plaintiff is unable, as a matter of law, to make a *prima facie* case for malicious prosecution, false arrest, or false imprisonment.

cause for the initial arrest, and case law establishes that if there was sufficient probable cause at the time of arrest, it continues to exist at the time of prosecution. In addition, Plaintiff is unable to make a *prima facie* claim for malicious prosecution because the proceedings did not terminate in Plaintiff's favor, which is the third required element. (*See* Disposition) ("… The Court finds that DOCCS has met its burden of proof and sustains Charges Seven and Eight.")

Accordingly, Plaintiff's claim for Malicious Prosecution also fails as a matter of law.

### C. Failure to State a Claim Against Mann and Pitt

Defendants Mann and Pitt note that the entire body of the complaint fails to state their names and, for that reason, fails to state a claim against them. (Sec. Def. Mem. at 3.) They argue that while Defendant could amend the complaint to include references to them, such an amendment would be futile due to the complaint's many other deficiencies. The Court agrees.

Whilst Defendants Mann and Pitt are not specifically named, a redeemable error, the irredeemable errors regarding the statute of limitations and existence of probable cause—which again, is a complete defense to the Fourth Amendment Claims—would make such an opportunity futile. Accordingly, the Court need not anticipate that Plaintiff could fix his Complaint through an opportunity to amend. The failure to reference Officers Mann and Pitt is therefore fatal, and all claims against them are dismissed.

### D. Failure to State a Claim Against City of Newburgh

With regards to the City of Newburgh ("Newburgh"), Newburgh argues that the Complaint fails to state a claim against it as well. (*Id*. at 4.) Newburgh claims that because there is no sufficient complaint alleged against Defendants Mann and Pitt, there cannot be a claim against Newburgh under *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978) because

*Monell* does not create an independent cause of action against a municipality, but rather, extends liability caused by public official's conduct to the municipality. (*Id*.) The Court, again, agrees.

*Monell* does not create independent cause of action against a municipality but rather extends liability caused by public officials' conduct to the municipality because its policy or practice led to the underlying violation. *See id*. (involving a policy that was "the moving force of the constitutional violation"); *see also City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197 (1989) (involving a failure to train municipal employees that led to the constitutional injury). Hence, to find Newburgh liable under *Monell*, the Court must find an underlying constitutional violation and an official policy, practice or custom of the City, such as a failure to adequately train police officers. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.")

Here, the Complaint neither properly pleads a constitutional violation nor does it state a claim against Mann and Pitt. Additionally, nowhere does it assert one factual allegation that these officers' conduct was pursuant to an official policy, practice or custom of the City. Accordingly, there can be no *Monell* liability—so any claim against the City of Newburgh is dismissed.

### E. Defendant Agrisani's Personal Involvement

A defendant's personal involvement in a constitutional violation is a prerequisite to liability under §1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to ... § 1983 suits, a Plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001).

Here, while S.P.O. Angrisani is identified as a defendant, the body of the Complaint contains no allegations of any kind against him. (*See* Compl.) Accordingly, the Complaint is dismissed as against him. *See Iqbal*, 556 U.S. at 672; *Calvin v. Schmitt*, 15 Civ. 6584, 2017 WL 4280683, at *8 (S.D.N.Y. July 7, 2017) ("When a complaint fails to allege any wrongdoing by the defendant, dismissal is proper.").

**F. Qualified Immunity for Parole Officers in Individual Capacity**

In determining whether defendants are entitled to qualified immunity, courts consider "(1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (citation omitted). Even if a plaintiff has established the violation of a constitutional right, however, defendants are still entitled to qualified immunity if it would not have been clear to a reasonable official that the actions defendants are alleged to have taken violated a constitutional right that was "clearly established" at the time of the violation. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009); *Doninger v. Niehoff,* 642 F.3d 334, 345 (2d Cir. 2011). Where "officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Court has discretion to perform the qualified immunity analysis in the order deemed most appropriate in light of the circumstances at hand. *Pearson*, 555 U.S. at 241.

To begin, as already discussed, the Complaint does not allege facts sufficient to show that the Parole Officer Defendants violated Plaintiff's Fourth Amendment constitutional rights. Because there is no constitutional violation adequately alleged, there can be no

14

allegation that the Parole Officer Defendants violated a constitutional right that was "clearly established" at the time of the alleged incident. Hence, Plaintiff is unable to defeat a qualified immunity argument.

Secondarily, S.P.O. Angrasani is not mentioned anywhere in the Complaint and, therefore, Plaintiff has not alleged that he violated Plaintiff's constitutional rights. Therefore, S.P.O. Angrasani would be entitled to qualified immunity since he had no personal involvement in any conduct that could even arguably be construed as a constitutional violation.

Thirdly, although P.O. Royce is mentioned in the Complaint, all that the Complaint effectively says about him is that that the Orange County District Attorney's Office, allegedly "work[ed] in cohoots" with Plaintiff and "refused to just dismiss the case against [h]im and instead decided to maliciously prolong the case him in order to hold Plaintiff incarcerated for as long as they could keep him... " (*See* Compl.) Basically, P.O. Royce is alleged to have issued a parole revocation warrant and to have testified about the incident at the hearing. Beyond these sparse statements, Plaintiff does not allege that P.O. Royce had any authority to terminate the parole revocation proceeding, or otherwise dismiss the case against him, that she affirmatively acted to ensure that the proceeding be continued. P.O. Royce is not alleged to have violated a clearly established law and is entitled to qualified immunity. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135-36 (2d Cir. 2013) (denying plaintiff's claim for constitutional violations against an officer, based on qualified immunity, where Complaint had no allegations that the officer was personally involved or participated in any organizational policies that related to any of Plaintiff's alleged constitutional violations).

Lastly, even if the Parole Officer Defendants were incorrect in determining that there

was a sufficient basis to find that Plaintiff violated parole, they are still entitled to qualified immunity because there was "arguable reasonable cause" to issue the parole warrant and commence revocation proceedings. Arguable probable cause exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met. *Escalera v. Lunn*, 361 FJd 737, 743 (2d Cir. 2004) ("Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest.")

Here, it was objectively reasonable for the Parole Officer Defendants to believe they had arguable reasonable cause to revoke Plaintiffs parole based on the allegations of his ex-girlfriend that he had threatened her with a knife, coupled with the finding of the knife/box cutter in Plaintiffs room. *See Lee v. Sandberg*, 136 F.3d 94, 104 (2d Cir. 1997) (finding State Troopers' arrest "objectively reasonable," as a matter of law, because probable cause to arrest existed "given the extraordinarily difficult judgment decisions that law enforcement officers must make in domestic violence situations").

Accordingly, even if the Complaint stated a claim against S.P.O. Angrisani or P.O. Royce, they are entitled to qualified immunity, and those claims are dismissed.

### G. Eleventh Amendment Protection for Parole Officers in Official Capacities

The Eleventh Amendment to the U.S. Constitution bars suits for compensatory or other retroactive relief against states, state agencies, and state officials sued in their official capacities absent their consent to such suits or an express statutory waiver of immunity. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). "New York has not waived its

immunity as to suits seeking either monetary or injunctive relief in federal court, ... nor has Congress abrogated such immunity." *Dudley v. Meekins,* 2013 WL 1681898, at *2 (E.D.N.Y. Apr.17, 2013) (citation and internal quotations omitted). Thus, as an agency or arm of the State of New York, the Division of Parole is immune from suit under the Eleventh Amendment. *See McCloud v. Jackson,* 4 F. App'x 7, 10 (2d Cir.2001). The Eleventh Amendment also "operates to prevent recovery against state employees sued in their official capacity for money damages." *Singleton v. Fischer,* 2013 WL 1339051, at *2 (S.D.N.Y. Apr.3, 2013).

Here, as a matter of law, Plaintiff's claims for monetary damages against the Parole Officer Defendants sued in their official capacities are dismissed, with prejudice.

## CONCLUSION

For the reasons discussed, Defendants' motions to dismiss are both GRANTED with prejudice. The Clerk of the Court is respectfully directed to terminate the motions at ECF No. 26 and 30, terminate the action, mail a copy of this order to Plaintiff at Plaintiff's last address listed on ECF, and to file proof of service on the docket.

Dated: February 1, 2019  
       White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge